

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:JMH  *271 Cadman Plaza East*
F. #2016R01753  *Brooklyn, New York 11201*

May 1, 2020

<u>By ECF</u>

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    <u>United States v. Edward Copeland</u>
                  <u>Docket No. 03-CR-1120 (FB)</u>

Dear Judge Block:

      The government respectfully submits this letter in response to defendant Edward Copeland's motion for a modification of an imposed term of imprisonment, pursuant to Title 18, United States Code, Section 3582(c)(1)(A), filed on April 28, 2020 (the "motion" or "Def. Mot.").

      The defendant was convicted, after a jury trial, of: conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371, 2113 (Count One); bank robbery, in violation of 18 U.S.C. § 2113(a) (Count Two); and (iii) unlawful use of a firearm in connection with those offenses, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three).  Your Honor sentenced the defendant to 60 and 196 months of imprisonment as to Counts One and Two, running concurrently, and 84 months of imprisonment as to Count Three, running consecutively.  <u>See</u> Judgment, ECF No. 187 (Aug. 26, 2005).

      The defendant now seeks a reduction of his sentence, to time served, due to the COVID-19 pandemic.  For the reasons set forth below, the motion should be denied on both procedural and substantive grounds.  The defendant has not met the administrative exhaustion requirements of Section 3582, and, on the merits, he fails to establish that the requested relief is warranted in light of his violent offense of conviction and violent criminal history.

I.      <u>Offense Conduct and Background</u>

      On September 29, 2003, the defendant—along with co-conspirators Virgil Rivers and Robertino Vasquez—committed a gunpoint robbery of a Dime Savings Bank in Brooklyn, New York.  Rivers and Vasquez entered the bank, displayed a firearm, told bank customers and

employees to put their hands up and not move, threatened to shoot, and took approximately $3,710 before fleeing to the getaway car driven by Copeland, waiting outside.  See Gov't Sentencing Memo, ECF No. 159, at 1 (Apr. 6, 2005).

The NYPD responded and Copeland led them on a brief, high-speed vehicle chase before crashing into a parked car.  Id. at 2.  Copeland and the others were arrested, and a search of the car located the firearm used in the robbery—loaded—and the money stolen.  Id.

The September 2003 robbery was not Copeland's first.  In his early 50s at the time of that arrest, Copeland had already been convicted of at least seven other robberies—three of which involved firearms—and confessed to at least four others.  See Pre-Sentence Investigation Report ("PSR") ¶¶ 35-65.  While Copeland did not personally brandish a firearm in the robbery of conviction, he had personally used or threatened to use weapons in previous robberies.  Id. at ¶¶ 35, 49-50.

At sentencing in August 2005, Copeland was adjudged a career offender and faced an advisory sentencing range under the United States Sentencing Guidelines of 360 months to life imprisonment.  See Gov't Sentencing Memo, ECF No. 159.  The Court imposed an effective sentence of 280 months of imprisonment, 80 months below the applicable Guidelines range.  See Judgment, ECF No. 187.

Copeland has served approximately 199 months of his sentence.  Consulting the website operated by the Bureau of Prisons ("BOP"), the defendant is anticipated to be released on or about August 18, 2023, in approximately 40 months.[1]  Based on discussions with BOP, the government understands that BOP has concluded that Copeland is ineligible for release to home confinement due to the violent nature of his conviction and his risk of recidivism.

II.     The COVID-19 Pandemic and BOP Response

On March 13, 2020, the President of the United States declared a National Emergency in response to the COVID-19 pandemic pursuant to the National Emergencies Act (50 U.S.C. §§ 1601 et seq.).  At that time, the Bureau of Prisons ("BOP") had already begun implementing national measures to mitigate the spread of COVID-19 within prisons.[2]  As part of these measures, every confirmed case of COVID-19 in the BOP's inmate and staff population is reported and tracked.  See https://www.bop.gov/coronavirus/.

The BOP began planning for potential coronavirus transmissions in January 2020.  At that time, the BOP established a working group to develop policies in consultation with

---

[1] See https://www.bop.gov/inmateloc/ (last visited, Apr. 30, 2020); see also Def. Mot. passim (discussing anticipated good time credits).

[2] See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. (last visited, Apr. 27, 2020).

2

subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO).[3]

On March 13, 2020, the BOP announced that it was implementing the COVID-19 Phase Two Action Plan in order to minimize the risk of COVID-19 transmission into and inside its facilities. Id. As of that date, the Action Plan comprised certain preventive and mitigation measures, including the following: all incoming inmates were screened, and staff were regularly screened; contractor visits were limited to essential services, while nearly all attorney, social, and volunteer visits were suspended; inmate movements between facilities were extremely limited; and institutions were taking additional steps to modify operations to maximize social distancing. Id.

On April 1, 2020, the BOP began implementing its Phase Five Action Plan to decrease the spread of COVID-19, which provides for securing each inmate in every BOP institution to his or her assigned cells/quarters for a period of fourteen days, while still providing inmates access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.[4] On April 13, 2020, the BOP extended these measures until May 18, 2020.[5]

In addition, the BOP was recently granted wider authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Since that date, the BOP has placed an additional 1,751 inmates on home confinement.[6]

Currently, at FCI Fort Dix, where the defendant is incarcerated, there are 40 confirmed cases of COVID-19 among inmates and 3 confirmed cases among staff.[7] With a total number of 2,936 inmates, approximately, less than 1.5% of FCI Fort Dix's inmate population has been confirmed infected with COVID-19.[8]

---

[3] See https://www.bop.gov/resources/news/20200313_covid-19.jsp. (last visited, Apr. 27, 2020).

[4] See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. (last visited Apr. 27, 2020).

[5] See https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (last visited Apr. 27, 2020).

[6] See https://www.bop.gov/coronavirus/ (last accessed Apr. 28, 2020).

[7] Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily tallies of confirmed infections) (last accessed May 1, 2020, at 3:15 p.m.).

[8] Federal Bureau of Prisons, FCI Fort Dix Information, available at https://www.bop.gov/locations/institutions/ftd/ (last accessed May 1, 2020, at 3:15 p.m.).

III.      Argument

The defendant's application is both procedurally improper and substantively meritless under Section 3582.

    A.    The Defendant's Motion Must Be Denied for Failure to Exhaust Administrative Remedies

The defendant contends that he has exhausted administrative remedies based upon the initial response received by counsel. See Mot. at 19; Mot., Ex. I. That is not so, as the defendant still has an application pending, according to BOP, as set forth in more detail below. Accordingly, the defendant has failed to exhaust his administrative remedies—a statutory prerequisite to compassionate release. As such, this motion is procedurally improper and should be denied without prejudice until such time as the defendant cures this deficit.

        1.    Applicable Law

A motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment. Id.

Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016). With respect to statutory exhaustion requirements, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." Id. Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. Id.

Indeed, the plain language of § 3582(c)(1)(A) makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights," with no statutory exceptions. Cf. Fry v. Napoleon Commty. Schs., 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). For this reason, this Court lacks the authority to grant a defendant's compassionate release motion absent exhaustion of the administrative remedies, as several courts in this district and circuit have held. See, e.g., United States v. Quashie, No. 14-CR-0376 (BMC), 2019 WL 7194211, at *1 (E.D.N.Y. Dec. 26, 2019) (discussing exhaustion requirement under the First Step Act ("FSA") and denying motion on ground that inmate failed to establish "whether he has requested any relief from the warden of his facility or that he has appealed the warden's decision to the Director of the BOP"); United States v. Hernandez, No. 19-CR-834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (finding that the compassionate release provisions of the FSA did not apply because "Mr. Hernandez does not appear to have sought any such relief within the BOP, let alone exhausted

4

his administrative remedies"); United States v. Cohen, No. 18-CR-602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020) ("As the Government points out, he is 'manifestly ineligible' for compassionate release and has not exhausted his administrative remedies."); United States v. Gileno, No. 19-CR-161 (VAB), 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, Mr. Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence.").[9]

The only Court of Appeals to have addressed the question has held that exhaustion is mandatory. See United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (holding that "any remand" to the district court to consider a compassionate release motion "would be futile" in light of the defendant's failure to exhaust, which "presents a glaring roadblock foreclosing compassionate release").

    2.    <u>The Defendant Has Failed to Exhaust His Administrative Remedies</u>

The defendant emailed a request for compassionate release on April 6, 2020, via counsel. See Mot., Ex. I. The Warden responded in a letter dated April 7, 2020, advising that because Copeland was capable of submitting his request directly, counsel's submission would not be considered. The government understands that counsel communicated that result to Copeland, who submitted a brief, summary request directly on or about April 20, 2020 (without attaching or referencing counsel's longer submission). See Ex. A. The government further understands that, on April 23, 2020, FCI Fort Dix rejected this submission because it failed to specify the specific category under which the defendant sought relief. See Ex. B. Finally, the government understands that, as of April 28, 2020, FCI Fort Dix has now associated counsel's submission and the defendant's submission. Accordingly, BOP has at least 30 days from April 28—i.e., May 28, 2020—to respond to the defendant's submission. Even by the defendant's accounting, BOP's response is not yet due as of this writing. See Mot. at 20.

The defendant takes the view that the BOP has rendered the administrative process unavailable. To the contrary: a fair reading of the sequence of events reflects that the BOP responded promptly, in writing, stating a basis for its decision, and providing an explanation of how the defendant could cure the problem. And, in the days since, the problem has been cured. This is not the proverbial "simple dead end" process that may be deemed

---

[9] But see, e.g., United States v. Scparta, No. 18-CR-578 (AJN), 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020) ("The First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions"); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) ("[T]he Court holds that Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic."); United States v. Perez, No. 17-CR-513, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (finding that exceptions to the exhaustion requirement apply, emphasizing that the defendant's three week sentence would expire before the exhaustion period ends).

unavailable under Ross, upon which the defendant relies. Ross v. Blake, 136 S. Ct. 1850, 1853 (2016) (observing that this would require "officers unable or consistently unwilling to provide any relief to aggrieved inmates" (emphasis added)).

The defendant argues that the Court should grant his motion, notwithstanding his failure to exhaust administrative remedies, because the statutory exhaustion requirement can be "waived" in light of the COVID-19 pandemic. In so arguing, the defendant relies on Washington v. Barr, 925 F.3d 109 (2d Cir. 2019), and a handful of district court cases that similarly rely on Washington v. Barr for the proposition that judges can create exceptions to the First Step Act exhaustion requirement. See Def. Mot. at 20-24 (collecting cases).

Defendant's reliance on Washington v. Barr and recent cases waiving the exhaustion requirement in the context of COVID-19 are misplaced. As explained in United States v. Woodson, No. 18-CR-845, 2020 WL 1673253, *3 (S.D.N.Y. Apr. 6, 2020), Washington v. Barr involved a judge-made exhaustion doctrine, not a statutory exhaustion requirement, like the one contained in the FSA. See Barr at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); id. at 118 ("Although not mandated by Congress, [exhaustion] is consistent with congressional intent."). In contrast, Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." See Ross, 136 S. Ct. at 1857. Statutory exhaustion requirements "stand[] on a different footing." Id. There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." Id. Thus, where a statute contains mandatory exhaustion language, as the FSA does, the only permissible exceptions are those contained in the statute. Id. The adverse decisions relied upon by the defendant fail to acknowledge this important distinction.

Furthermore, in arguing for waiver of the exhaustion requirement, the defendant simply ignores the most recent decisions on this issue within the Eastern District of New York. In United States v. Flores, 15-CR-152 (RRM) (E.D.N.Y. Apr. 12, 2020), Chief Judge Mauskopf noted that failure to exhaust administrative remedies was a "threshold matter" that prevented the Court from considering a Section 3582 application. Judge Chen reached the same conclusion in United States v. Napout, 15-CR-252 (PKC) (E.D.N.Y. Apr. 14, 2020) (failure to satisfy the statutory exhaustion requirement "deprived the Court of the authority" to consider his Section 3582 application); United States v. Facey et al., No. 96-CR-912 (ERK) (E.D.N.Y. Apr. 14, 2020) (denying motion for compassionate release because "the issue of exhaustion presents a hurdle I have concluded [the defendant] cannot surmount").

Because the defendant has failed to satisfy Section 3582's mandatory exhaustion requirement, his motion must be denied.

### B.  A Sentencing Reduction Is Not Warranted under Section 3582

Even if the Court were to excuse the defendant's failure to exhaust his administrative remedies—which it cannot—his request for relief fails on the merits.

### 1.  Applicable Law

If a defendant has exhausted his administrative remedies, as described above, § 3582(c)(1)(A)(i) permits a court to modify an already imposed sentence upon a showing of "extraordinary and compelling reasons."  Specifically, a court may "modify a term of imprisonment" when, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," and to the extent a reduction is consistent with the applicable policy statement in the Sentencing Guidelines, the court "finds that extraordinary and compelling reasons warrant such a reduction."  Id.; see also United States v. Gotti, 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) ("It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification.  He is simply eligible for a sentence modification.  The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

The Guidelines and BOP policy have established clear criteria to aid in a court's determination of when compassionate release is appropriate pursuant to § 3582(c)(1)(A)(i).  See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Both the Guidelines and the BOP Program Statement primarily limit compassionate relief to cases of serious illness or impairment, advanced age, or a need to care for a child, spouse, or registered partner.  See id. (defining criteria applicable to "Terminal Medical Condition(s)," "Debilitated Medical Condition(s)," and "Elderly Inmates with Medical Conditions," among others); see also United States v. Traynor, 04-CR-0582 (NGG), 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009).  As the Court recognized in Traynor, Congress indicated that § 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner."  Id. at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3304).

The Guidelines further contain a "catchall" residual provision, affording discretion to the Director of the Bureau of Prisons to move for compassionate release for a defendant in circumstances other than those explicitly delineated in the Guidelines.  See U.S.S.G. § 1B1.13 App. Note 1(D) ("Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

A defendant seeking relief under § 3582(c)(1)(A) "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction."  United States v. Greenhut, No. 18-CR-00048 (CAS), 2019 WL 6218952, at *1 (C.D. Cal. Nov. 21, 2019); Cannon

7

v. United States, No. CR 11-048 (CG), 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."); see also United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016) (same under § 3582(c)(2)); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (same); United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

> 2. The Defendant Has Not Established "Extraordinary and Compelling" Circumstances to Justify His Release

The defendant argues that his age, hypertension, and other medical conditions—in the context of the COVID-19 pandemic—constitute "extraordinary and compelling circumstances" to justify a sentencing reduction to time served. See Def. Mot. at 9-14. When balanced against the relevant Section 3553(a) factors and the significant danger to the community that the defendant still poses—based upon his lifetime of violent criminal conduct—these developments do not suffice to justify his release.

Indeed, the defendant highlights a series of cases in which compassionate release was granted to applicants with health conditions at least passingly similar to the defendant's. The defendant ignores, however, the far less serious offenses and/or far shorter sentences involved in those cases. See Def. Mot. at 13-16 (collecting cases); United States v. Bess, No. 16-CR-156 (LJV), 2020 WL 1940809, *1 (W.D.N.Y. Apr. 22, 2020) (non-violent narcotics offense and sentenced to 84 months; noting that defendant's criminal history "is comprised of relatively small burglary and theft-related offenses," none of them violent); United States v. Scparta, No. 18-CR-578 (AJN), 2020 WL 1910481, *2 (S.D.N.Y. Apr. 20, 2020) (theft of government funds and tax evasion and sentenced to 18 months); United States v. Atwi, No. 18-20607 (LJM), 2020 WL 1910152, *1 (E.D. Mich. Apr. 20, 2020) (food stamp fraud and sentenced to four months); United States v. Joling, No. 11-CR-60131 (AA), 2020 WL 1903280, *1 (D. Or. Apr. 17, 2020) (tax evasion and related offenses and sentenced to 97 months); Samy v. United States, No. 16-20610 (AJT), 2020 WL 1888842, *1 (E.D. Mich. Apr. 16, 2020) (non-violent narcotics offense and sentenced to 36 months); United States v. Ben-Yhwh, __ F. Supp. 3d __, 2020 WL 1874125, *2 (D. Haw. Apr. 13, 2020) (non-violent narcotics offense and sentenced to 60 months); United States v. Burrill, __ F. Supp. 3d __, 2020 WL 1846788, *1 (N.D. Cal. Apr. 10, 2020) (investment advisor fraud and tax evasion and sentenced to 30 months); United States v. Sawicz, No. 08-CR-287 (ARR), 2020 WL 1815851, *1 (E.D.N.Y. Apr. 10, 2020) (possession of child pornography and sentenced to 60 months); Miller v. United States, No. 16-20222 (AJT), 2020 WL 1814084, *1 (E.D. Mich. Apr. 9, 2020) (narcotics offense and felon in possession of firearm and sentenced to 72 months); United States v. Zukerman, No. 16-CR-194 (AT), 2020 WL 1659880, *1 (S.D.N.Y. Apr. 3, 2020) (tax evasion and related offense and sentenced to 70 months); United States v. Colvin, No. 19-CR-179 (JBA), 2020 WL 1613943, *1 (D. Conn. Apr. 2, 2020) (mail fraud and sentenced to 30 days imprisonment); United States v. Muniz, No. 04-CR-199 (KPE), 2020 WL 1540325, *1 (S.D. Texas Mar. 30, 2020) (non-violent narcotics offense and sentenced to 188 months); but see United States v. McCarthy, No. 17-CR-230 (JCH), 2020 WL 1698732, *1 (D. Conn. Apr. 8, 2020) (armed bank robbery and sentenced to 38 months, with "intensive mental health treatment" to follow); United States v. Rodriguez, No. 03-CR-271 (AB), 2020 WL 1627331, *1 (E.D. Pa. Apr. 1, 2020) (narcotics offense and unlawful firearm possession and sentenced to 240 months).

While the coronavirus pandemic is, without question, a health crisis of the utmost gravity, the BOP has undertaken a variety of measures—including the suspension of visits, restriction on inmate movement, and other means of mandating social distancing—in order to mitigate the potential spread of COVID-19.

Finally, the factors set forth in 18 U.S.C. § 3553(a) clearly weigh against the defendant's release.  See Gotti, 2020 WL 497987, at *2 ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").  The defendant, together with others, committed a violent and dangerous crime: a bank robbery that led to a high-speed pursuit and ended in a car crash.  He committed that offense after an adult lifetime of similar violent crimes, several involving firearms.

The defendant's clean disciplinary record in prison, the good time credits he has accrued, and the support of his current correctional counselor (Mot. at Ex. A) are commendable.  But this does not suffice to establish that he would not pose a risk to the community if released.  Def. Mot. at 16.  The defendant's recent record while incarcerated should be weighed against his record while not incarcerated: a record of violent felonies that culminated in the sentence he is serving now.  (The defendant curiously claims that his criminal history is "dated," Mot. at 16, but the defendant's record prior to his September 2003 arrest reflects that it is his incarceration since that date that has been principally responsible for that "dating").

Further, Congress has mandated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" warranting compassionate release.  28 U.S.C. § 994(t) (statement of Congress in enacting the Sentencing Reform Act); see also United States v. Washington, No. 13-020 (DCR), 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (denying motion to modify a sentence, noting that the "language of § 994(t) evidences clear congressional intent to bar relief based on rehabilitation alone").

9

IV.     Conclusion

        For the reasons set forth above, the defendant's motion for compassionate release should be denied on both procedural and substantive grounds.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:    /s/

        J. Matthew Haggans
        Assistant U.S. Attorney
        (718) 254-6127

cc:    Clerk of Court (FB) (by ECF and by Email)
        Daniel Habib, Esq. (by ECF and by Email)

# EXHIBIT A

BP-A0148  
JUNE 10  
U.S. DEPARTMENT OF JUSTICE

INMATE REQUEST TO STAFF CDFRM

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Mr. Ortiz (Warden) | DATE: 4-20-20 |
|---|---|
| FROM: Edward T Copeland | REGISTER NO.: 24627-037 |
| WORK ASSIGNMENT: A&O Orderly | UNIT: [redacted] |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I'm seeking to be released under the "Compassionate Release" due to medical complications specified in my "Medical-Records" that are listed below and that put me at risk due to the "Corona-Virus". I'm 67-yrs old also. (Hepatitic C; Borderline Diabetes; Heart Disease Medication/Atorvastatin; High Blood Pressure Medication (Hydrochlorothiazide.)

(Do not write below this line)

DISPOSITION:

Signature Staff Member | Date

Record Copy - File; Copy - Inmate  
PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86  
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

# **EXHIBIT B**

**Copeland, Edward T.**
Register Number: 24627-037
Unit ▮▮▮▮▮▮

## INMATE REQUEST TO STAFF RESPONSE

This is in response to your request for consideration for Compassionate Release/Reduction in Sentence (RIS) in accordance with 18 U.S.C. §3582(c)(1)(A) and Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. §3582(c)(1)(A) and §4205 (g).

In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. §3582(c)(1)(A) and 4205 (g), an inmate may initiate a request for consideration only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.

A review of your case reveals you requested a Compassionate Release/RIS consideration. Each category has specific eligibility requirements that must be met in order to qualify for Compassionate Release/RIS. In order for your request to be properly assessed, you must indicate which category under sections 3, 4, 5 or 6 of the Program Statement in which you wished to be considered under. In addition, please assure you include your release plan (employment, medical, financial). If you still wish to be considered for Compassionate Release/RIS please re-submit your request with the one specific category.

If you are dissatisfied with this response, you may appeal the decision through the Administrative Remedy process.

M. Bridges
Executive Assistant

4-23-2020
Date