UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA

   -v-

EDWARD COPELAND,

------------------------------------------------x

**OPINION**
Case No. 02-cr-01120 (FB)

Appearances:
*For the Defendant*:
DANIEL HABIB
Federal Defenders of New York
52 Duane Street
New York, NY 10007

*For the United States of America:*
J. MATTHEW HAGGANS
U.S. Attorney's Office, E.D.N.Y.
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Until his Court-ordered release on May 11, Edward Copeland ("Copeland") was incarcerated at FCI Fort Dix serving the last 4 years of a 23-year sentence for his role as the getaway driver in a 2003 bank robbery that saw no one harmed and $3,700 stolen. While incarcerated, Copeland incurred no disciplinary infractions, received numerous work-detail promotions, completed extensive drug-treatment and education, and worked tirelessly with fellow inmates in rehabilitative, vocational, and educational programs. Having spent the better part of two decades behind bars, Copeland moved under the First Step Act for compassionate release and a reduction of sentence based on his age (67 years), declining health, and time-served. The Court heard from counsel for Copeland and the Government at a hearing on May 8, and granted Copeland's motion three days later, noting that a "written decision [would] follow."

1

## I.

Under the First Step Act, a court "may reduce [a] term of imprisonment" *if* "extraordinary and compelling reasons warrant such a reduction," *and* the "reduction is consistent" with (i) "applicable policy statements issued by the Sentencing Commission" and (ii) "the [sentencing] factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission's "policy statements" condition release on a determination that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Sentencing Guideline § 1B1.13, ("Reduction in Term of Imprisonment Under 18 U.S.C § 3582(c)(1)(A)").

Section 3553(a) further obligates that courts weigh the prospect of release against the interests of continued incarceration—namely deterrence, punishment, and incapacitation. *See* 18 U.S.C. § 3353(a).

**A.** <u>**Extraordinary & Compelling Circumstances.**</u>

To start, Copeland must show "extraordinary and compelling reasons warrant" relief under the First Step Act. The "Application Notes" appended to the United States Sentencing Guidelines provide a non-exhaustive list of circumstances meeting that standard. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). At least three are present in Copeland's case:

2

1.  Copeland's Medical Condition.  Application Note 1(A) provides that compassionate release may be appropriate if a defendant "suffer[s] from" a "serious physical or medical condition," "serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" that "substantially diminishes" the defendant's ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Here, Copeland's age and host of underlying medical conditions, coupled with the emergence and rapid spread of COVID-19 at FCI Fort Dix (and federal correctional facilities generally), "substantially diminish[]" his ability to "provide self-care within the environment of a correctional facility."

Among other ailments, Copeland suffers from hypertension, pre-diabetes, hyperlipidemia, latent tuberculosis infection, and vitamin D deficiency.  He has long battled chronic hepatitis C, from which he also has liver necrosis, and suffered with aortic atherosclerotic disease since at least 2017, which elevates his risk of stroke and coronary artery disease.  All told, Copeland is among those most vulnerable to the severe symptoms and adverse outcomes of COVID-19.[1]

---

[1] *See* Ctr. Disease Control (CDC), *Severe Outcomes Among Patients with Coronavirus Disease 2019* (March 27, 2020) ("80% of deaths associated with COVID-19 were among adults aged ≥65 years"); CDC, *Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019* (Apr. 3, 2020) ("patients with underlying health conditions and risk factors including . . . coronary artery disease . . . might be at

2. <u>Copeland's Age</u>. Under Application Note 1(B), extraordinary and compelling reasons may exist if a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her sentence, whichever is less." Irrespective of the current COVID-19 pandemic, therefore, Copeland meets the "extraordinary and compelling reasons" threshold because of his age ("at least 65"), "serious deterioration" in his physical health, and the length of time (at least 10 years) he has already served.

3. <u>"Other Reasons"</u>. Finally, under Application Note 1(D), extraordinary and compelling reasons may exist on any basis "other than, or in combination with" those already outlined. To that end, the Bureau of Prisons' own guidance states that an inmate may qualify for reduced sentencing for *non*-medical reasons so long as that inmate is (i) "age 65 or older" and (ii) has "served the greater of 10 years of 75% of the term of imprisonment." Program Statement 5050.50(4)(c). Copeland meets both criteria: He is 67 years old and has served, counting time for good behavior, 229 months (or 81.8%) of a 280-month sentence.

---

higher risk for severe disease or death"); World Health Org., *China Joint Mission on Coronavirus Disease 2019* at 12 (Feb. 24, 2020) ("individuals at highest risk for severe disease and death include people aged over 60 years and those with underlying conditions such as hypertension").

At bottom, the BOP's Program Statement and Sentencing Commission's Guidelines are useful tools for defining the "extraordinary and compelling" standard, but they are not the bounds of judicial authority to grant compassionate release. *United States v. Haynes*, 2020 WL 1941478, at *11–15 (E.D.N.Y. Apr. 22, 2020) ("authority to . . . determine what [Other Reasons] qualify as 'extraordinary and compelling'" rests with the courts "regardless of BOP's view on the matter and without having to await a someday-updating by the Commission").[2] The First Step Act made that much clear when it amended 18 U.S.C. § 3582—in a section titled "Increasing the Use and Transparency of Compassionate Release"—to explicitly allow courts to grant compassionate release even if the BOP Director has found such relief inappropriate. FSA § 603(b), 132 Stat. 5194, 5239. *See also United States v. Ebbers*, 2020 WL 91399 at *7 (S.D.N.Y. Jan. 8, 2020) ("Congress has made the legislative judgment to increase the use of compassionate release. The section's title . . . unambiguously states as much.").

---

[2] *See also United States v. Beck*, 2019 WL 2716505 (M.D.N.C. June 28, 2019); *United States v. Fox*, 2019 WL 3046086 (D. Me. July 11, 2019); *United States v. Brown*, 411 F. Supp. 3d 446 (S.D. Iowa Oct. 8, 2019); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Schmitt*, 2020 WL 96904 (N.D. Iowa Jan. 8, 2020); *United States v. Ebbers*, 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020); United *States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. O'Bryan, 2020 WL 869475*, (D. Kan. Feb. 21, 2020); *United States v. Young*, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020); *United States v. Redd*, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020); *United States v. Owens*, 97 CR-2546, ECF No. 93 (S.D. Cal. Mar. 23, 2020); *United States v. Decator*, 2020 WL 1676219, (D. Md. Apr. 6, 2020).

Compassionate relief matters. It matters so that courts may account for tragically unforeseeable events, as when an illness or disability renders proper care impossible while a defendant remains incarcerated, or when family tragedy leaves an inmate the sole caretaker for an incapacitated partner or minor children. It matters too, as present circumstances make clear, when public-health calamities threaten inmates with literal death sentences. It matters even when no crisis looms, but simply when continued incarceration would be "greater than necessary" to achieve the ends of justice. *See, e.g.*, *United States v. Maumau*, 2020 WL 806121, at *6 (D. Utah Feb. 18, 2020) (compassionate release may be justified even if "[defendant] is not suffering from any medical- or age-related physical limitations").

Whether or not the Court weighs the additional concerns associated with COVID-19, Copeland has shown that his age, deteriorating health, and extended time already served constitute "extraordinary and compelling" reasons for his release.

**B.      18 U.S.C. § 3553(a) & 18 U.S.C. § 3142 Considerations.**

The Court also finds that Copeland "is not a danger to the safety of any other person or to the community," 18 U.S.C. § 3142(g), and that his release comports with Section 3553(a)'s mandate that a sentence reflect a defendant's personal "history and characteristics" and be "sufficient, *but not greater than necessary*" to "reflect the seriousness of the offense," "provide just punishment," and "protect the

public from further crimes of the defendant." § 3553(a)(1), (2)(A)–(C) (emphasis added).

 1. As to the seriousness of his offense, the Court opined during Copeland's 2005 sentencing that his convicted crime and criminal past, while serious and inexcusable, reflected "no indication that [Copeland] physically assaulted anyone" or "visited [major physical harm] upon any" victim. Sent'g Tr. 29. Copeland was, in effect, a "kind of benign bank robber." *Id.* Even still, he has paid a crushing penalty for the 2003 robbery and seen most of his 50's and 60's from behind bars. It hardly follows that the grant of compassionate release, 19 years into a 23-year sentence, is letting Copeland 'off easy.'

 The Government's insistence that Copeland continues to pose a "significant danger" to the community lacks substantive basis or legal merit. The Government does not dispute any key facts, outlined above, of Copeland's age or medical condition. Neither does it articulate any reason why the interests of punishment, deterrence, or incapacitation are served by keeping an elderly man, enfeebled by medical complications, locked-up. Copeland's 2003 offence, serious as it was, does not preclude the grant of compassionate release today. *United States v. Asaro*, 2020 WL 1899221 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to defendant convicted of arson and indicted for murder of cooperating witness).

2. Moreover, any risk of recidivism—already vanishingly small given Copeland's age—is further mitigated by Copeland's completion of drug rehabilitation while incarcerated, which addressed his long struggle with addiction that was "a significant circumstance[]" motivating his criminal behavior. Sent'g Tr. 46; *see also* U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 23, 30 (Dec. 2017).

3. As to Copeland's personal history and characteristics, his exemplary discipline record during his incarceration has already been noted, as has his work-detail promotions, completion of drug treatment and education programs, and work with other inmates. The Court now adds the remarks of Copeland's correctional counselor, made in a letter submitted to the U.S. Attorney's Office, which state that Copeland "earned the respect [of] the other inmates while helping them along the way," "demonstrated tremendous growth," and that "[e]very staff member at [FCI Fort Dixon] has had a positive interaction" with Copeland. Mot. Ex. A. *Cf. Pepper v. United States*, 562 U.S. 476, 490–91 (2011) (district court conducting resentencing "may consider evidence of a defendant's rehabilitation since his prior sentencing" as such evidence "may be highly relevant" to §§ 3553(a)(2)(B) and (C)).

In short, neither Section 3553(a) nor Section 3142(g) compel continued incarceration. Indeed, Copeland has all but served the sentence that this Court

sought to impose in 2005—a "lengthy sentence" that would "as a practical matter, incapacitate [Copeland] considering his age." Sent'g Tr. 30.[3]

## II.

The Court recognizes that the First Step Act should not be a basis to reconsider the probity of a sentence justly, fairly, and correctly imposed. It writes, however, to reinforce the significant change the Act makes in authorizing district judges to recalibrate sentencing when warranted for appropriate compassionate reasons. Congress has admirably put its imprimatur on humanizing our sentencing laws in order to assuage their harsh, rigid effect. *See, e.g.*, Amicus Br. for United States Senators Supporting Appellant at 3, *United States v. Mapuatuli*, No. 19-10233 (9th Cir. May 15, 2020) ("The First Step Act was the culmination of a years-long bipartisan effort to undertake much-needed correctional, sentencing, and criminal justice reform."). Hopefully the First Step Act will not be the last step in that direction. *See, e.g.*, *May v. Shinn*, 954 F.3d 1194, 1209 (9th Cir. 2020) (Friedland,

---

[3] The Government also opposes Copeland's motion on the grounds that he "failed to exhaust administrative remedies—a statutory prerequisite to compassionate release." Opp'n at 4. That argument balks at the First Step Act's clear provision of *two* paths to judicial review: exhaustion *or* "the lapse of 30 days from the receipt of [a release request] by the warden of the defendant's facility." 18 U.S.C. § 3582. Copeland, through counsel, submitted a request for release to the warden of FCI Fort Dixon on April 6, 2020. The statutory clock therefore expired on May 6, 2020. *Cf.* 28 C.F.R. § 571.61(b) ("[BOP] processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.").

J., concurring) ("But I agree with the dissent that this case, and in particular May's sentence, reflects poorly on our legal system.").

Notably, the Department of Justice found that "[d]efendants released through the compassionate release program are less than a tenth as likely to recidivate as the average federal prisoner." *USA v. Osorto*, 2020 WL 2323038, at *5 (N.D. Cal. May 11, 2020) (citing Dept. of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 49–50 (2013) ("Inspector General Report")). Moreover, it has estimated that "broader use of compassionate release could save taxpayers millions and free desperately needed space in BOP facilities." *Id.* (citing Inspector General Report at 45–48).

The present case is a text-book example of when a compassionate release is warranted. As pointed out, *supra*, even if Copeland were healthy, he met the criteria for release. But surely his poor health, especially in the face of the unforeseen ravages of COVID-19, removes any possible doubt that he should no longer be incarcerated.

Yet, the Government opposed his release. In view of the newness of the First Step Act, it is perhaps understandable that it has taken some time for it to fully comprehend its significance and application. But where, as here, compassionate release is clearly indicated, the Court would expect the Government to support its application. *But see Haynes*, 2020 WL 1941478 at *18 (by enacting the First Step

10

Act "Congress has spoken. Loudly. . . . The government, however, remains disturbingly comfortable in its position and unaccountably indifferent to the impact of [continued incarceration] on [defendant's] life."). Especially is this so in the EDNY which has a rich history of priding itself on doing justice. *See, e.g.*, *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014) (a United States Attorney "can do justice by the simple act of going back into court and agreeing that justice should be done").

* * *

For the foregoing reasons, Copeland's motion for compassionate release under the First Step Act was appropriately granted.

    /S/ Frederic Block_____
    FREDERIC BLOCK
    Senior United States District Judge

Brooklyn, New York
May 19, 2020